**JOHNSON v. UNITED STATES.**
No. 48520.

United States Court of Claims.
April 8, 1952.

Madden, J., dissented.

Charles J. Margiotti, Pittsburgh, Pa., for plaintiff.

William A. Stern II, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., John R. Franklin, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

In our former opinion, on defendant's demurrer to plaintiff's petition in this case, 79 F.Supp. 208, 111 Ct.Cl. 750, we held that plaintiff was estopped to claim his salary as a resigned judge of an United States District Court, because of his renunciation of the right to that salary, given to stop impeachment proceedings against him, then under consideration by a committee of the House of Representatives of the United States Congress. However, we overruled defendant's demurrer to plaintiff's petition because of the allegation therein that at the time plaintiff renounced his right to his salary he was mentally incompetent.

Proof has now been taken on this issue. Plaintiff testified himself, his wife, one of his sons, and friends and neighbors testified for him, and a physician or two and a psychiatrist. The testimony of all of them was vague and inconclusive. It all adds up to this: After the charges had been made against Judge Johnson, he became abstracted, inattentive, preoccupied, and careless of his personal appearance. A good deal was made of the fact that he was discovered on one occasion wandering near the river bank. We can think of several people over the years who under similar circumstances

might be found wandering near the river bank. He was remorseful perhaps, perplexed, maybe desperate, but hardly unconscious of what he was doing. He was perhaps more keenly conscious than ever before.

It is true all these witnesses testified that they thought that at the time Judge Johnson signed his letter of renunciation that he was mentally incompetent to realize what he was doing; but their testimony is set at naught by the testimony of the three lawyers who represented Judge Johnson in the impeachment proceedings and who were present when the letter of renunciation was signed. These lawyers were not called by plaintiff or by defendant, but by the Commissioner of this court, who is charged with the duty of ascertaining the facts and reporting them to the Court.

The Court is not acquainted with any of these lawyers, but a reading of their testimony convinces us at once that they are men of probity and of high, professional character.

The first of them to be introduced was John H. Bigelow. The Commissioner asked him if at the time Judge Johnson signed his letter of renunciation he had the mental capacity to understand the nature and the consequences of his act. The attorney claimed privilege to refuse to answer unless the privilege was waived by Judge Johnson. A recess was taken, and after Judge Johnson had conferred with his attorney, the privilege was waived. Whereupon, Mr. Bigelow testified " * * * my opinion is that he was of sound mind and had full mental capacity."

He was carefully cross-examined by plaintiff's attorney, but this only strengthened his answer to the Commissioner's question, quoted above. He said the letter of renunciation was handed to Judge Johnson and that he read it and signed it. He was asked if counsel read it to him and explained to him what he was signing. He replied that there was no occasion for explaining it to him, because "he was an intelligent man and knew what was in it."

He further said that the reason motivating Judge Johnson in signing the letter was,

first, that he had been embarrassed by the Committee's cross-examination of him the day before and wished to avoid further cross-examination; and, secondly, "he thought, if the waiver was executed, there would be no further prosecution."

Mr. Bigelow's associate counsel were former Judge Michael F. McDonald and Thomas M. Lewis, Esquire, formerly of the Common Pleas Court. They both fully substantiated Mr. Bigelow's testimony.

After a review of the testimony, we thoroughly agree with the Commissioner that "at the time of signing the letter and during the evening conference the night before, plaintiff thoroughly understood the nature and consequences of his act of renouncing his right to receive the pay of a resigned Federal judge."

In view of this finding, we hold, for the reasons expressed in our former opinion, that plaintiff is not entitled to recover. His petition will be dismissed.

JONES, Chief Judge, and HOWELL and LITTLETON, Judges, concur.

MADDEN, Judge.

I dissent from the court's decision dismissing the plaintiff's petition. When the case was before us on the Government's demurrer to the plaintiff's petition, I agreed with the court that the Government's demurrer should be overruled, but I did not agree with the court's conclusion that the plaintiff had lost the right to the pay which the statute granted him, unless he was mentally incompetent when he purported to renounce that right. I thought then, and still think, that even if, as the court now finds after an extended hearing, the plaintiff was mentally competent at the time of his attempted renunciation, his attempt to renounce was futile. My views to that effect, and to the effect that the Act of June 24, 1946, 60 Stat. 304, was a Bill of Pains and Penalties, and was therefore unconstitutional, appear in 79 F.Supp. at page 214, 111 Ct.Cl. at page 761, and will not be repeated here.

I think the plaintiff is entitled to recover.